IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE GRAND JURY SUBPOENA | § | |
| ISSUED TO TWITTER, INC. | § | No. 3:17-mc-40-M-BN |
| | § | |
| | § | **SEALED** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Movant Twitter, Inc. ("Movant" or "Twitter") has filed a sealed Motion to Quash Grand Jury Subpoena and Vacate Gag Order. *See* Dkt. No. 1 (the "Motion to Quash and Vacate," "Motion to Quash," or "Motion to Vacate").

Chief Judge Barbara M. G. Lynn referred the Motion to Quash and Vacate to the undersigned United States magistrate judge for hearing, if necessary, and to submit proposed findings and recommendations for disposition of the Motion to Quash under 28 U.S.C. § 636(b). *See* Dkt. No. 5.

The government filed a response to the Motion to Quash and Vacate, *see* Dkt. No. 13; Twitter filed a reply, *see* Dkt. No. 14; and, on August 15, 2017, the undersigned held oral argument on the Motion to Quash and Vacate, at which Twitter's counsel and the government's counsel appeared, *see* Dkt. No. 19.

For the reasons and to the extent explained below, the Court should grant in part Twitter's Motion to Quash Grand Jury Subpoena and Vacate Gag Order [Dkt. No. 1].

## Background

On May 11, 2017, the government's counsel, Assistant United States Attorney

-1-

Douglas William Gardner, caused a grand jury subpoena (the "Subpoena") to be served on Twitter. The Subpoena required Twitter to appear and testify before the grand jury on June 6, 2017, in connection with a grand jury investigation into Justin Mark Shafer's alleged cyber-harassment of FBI Agent ▮▮▮▮▮▮, the agent who signed the criminal complaint in *United States v. Rivello*.

The Subpoena sought subscriber data for five Twitter accounts (@dawg8u, @abtnatural, @Popehat, @associatesmind, and @PogoWasRight) and required Twitter to provide records and information associated with those accounts, including the account users' names, addresses, and Internet Protocol ("IP") addresses. These five Twitter accounts, along with Justin Shafer via his own Twitter account @JShafer817, participated in an online conversation regarding *Rivello* that mentioned Agent ▮. The government wished to investigate the users involved in the discussion, as Shafer's potential associates, to determine if they were involved in cyberstalking Agent ▮ or had any information that would aid the government's investigation of Shafer's alleged crime.

Shafer was publicly indicted on April 19, 2017. Shortly after, the Court entered a 18 U.S.C. § 2705(b) order on May 16, 2017 (the "Gag Order"), prohibiting Twitter from notifying any person of the existence of the Subpoena. On June 5, 2017, Twitter filed its Motion to Quash and Vacate that is before the Court.

Twitter's opposition to both the Subpoena and the Gag Order is grounded in the First Amendment. Twitter argues that the Subpoena abridges Twitter's users' First Amendment rights to anonymous speech, association, and the receipt of ideas. Based

-2-

on these First Amendment infringements, Twitter asserts that the government is barred from obtaining the information the Subpoena requests without (1) a compelling interest in the information and (2) a substantial relationship between that information and the investigation of Justin Shafer. Twitter acknowledges the government's compelling interest in investigating alleged cyberstalking of an FBI agent but explains that the government failed to establish the latter element – because the only connection between Shafer and the five Twitter accounts listed in the Subpoena is that they all participated in what Twitter describes as a "benign conversation" about *Rivello*. Dkt. No. 1 at 1 of 2.

Twitter contends that enforcement of the Gag Order is barred by both the First Amendment and the statute authorizing such orders. First, Twitter argues that the Gag Order violates the First Amendment because it amounts to an unconstitutional prior restraint on Twitter's own speech and fails to meet strict scrutiny.

Second, Twitter maintains that the Gag Order also fails under Section 2705(b) because it is no longer necessary to protect the government's investigation. Twitter explains that it has preserved responsive records, thereby eliminating the risk that the information sought by the government will be compromised by subscribers. Twitter also points out that Shafer has been publicly indicted and that any Twitter user involved in Shafer's alleged crime has incentive to destroy traces of his or her involvement, even without knowledge of the Subpoena.

In its response, the government first questions whether Twitter has standing to challenge the Subpoena. The government maintains that Twitter has not suffered an

-3-

injury in fact; that Twitter's users have not suffered an injury in fact; and that, even if Twitter's users have suffered the requisite injury, Twitter does not have a sufficiently close relationship to its users to assert third-party standing.

In the alternative, the government argues that the Subpoena does not impinge on Twitter's users' First Amendment Rights in any way. Still, the government applies the test that controls when a grand jury subpoena violates First Amendment rights. The government contends that it has demonstrated a compelling interest in investigating Justin Shafer's alleged cyber-stalking of FBI Agent ▮▮▮▮▮▮. Further, the government asserts that there is a sufficient relationship between that interest and the information sought from Twitter accounts listed in the Subpoena, because the government wants to determine whether the users were accomplices of Shafer or have knowledge of the crime.

Finally, the government argues that the Gag Order, despite its restriction of Twitter's rights, is necessary to protect the government's investigation. In support of its position, the government cites to several interests that animate and are protected by Section 2705(b) – including protecting the integrity of an investigation, preventing destruction of evidence, and protecting witnesses from retaliation or intimidation – and insists that each is threatened in this case. The government also emphasizes the need for secrecy in grand jury proceedings and ongoing criminal investigations. The government further contends that the Gag Order is required to prevent Twitter's users from encouraging the harassment of FBI Agent ▮▮▮.

-4-

## Legal Standards

I. <u>Motion to Quash the Subpoena</u>

The Court has authority under Federal Rule of Criminal Procedure 17(c) to quash or modify a grand jury subpoena "if compliance would be unreasonable or oppressive." FED. R. CRIM. P. 17(c)(2); *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 913 F.2d 1118, 1127 (5th Cir. 1990). As a "general rule," "courts should normally enforce grand jury subpoenas." *Reyes-Requena*, 913 F.2d at 1128; *see also U.S. v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) ("[A] grand jury subpoena issued through normal channels is presumed to be reasonable."). But that general rule "does not conflict with the court's Rule 17(c) supervisory authority to modify or quash a subpoena whose timing may be oppressive or unreasonable," although "[e]ach claim for relief must be carefully and independently evaluated under Rule 17(c)." *Id.* at 1128-29. "Rule 17(c) offers a vehicle for a subpoenaed party to assert a constitutional, statutory, or common-law privilege." *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 585 (4th Cir. 2007). *See generally United States v. Calandra*, 414 U.S. 338, 346 (1974) (explaining that the grand jury's subpoena power does not allow it to violate "a valid privilege, whether established by the Constitution, statutes, or the common law").

A party challenging a subpoena in federal court must have standing to do so, and standing is the dispositive issue in resolving Twitter's Motion to Quash.

A party's ability to sue in federal court is subject to both constitutional and prudential limits. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). First, the Constitution

-5-

mandates that every plaintiff make out a "case or controversy" within the meaning of Article III by alleging "such a personal stake" as to warrant his invocation of federal-court jurisdiction. *Id.* at 498; *see also* U.S. Const. art. III, § 2. "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (internal citations omitted).

Second, even where a party has alleged a sufficient injury to meet Article III's standing requirements, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of third parties." *Warth*, 422 U.S. at 499. This prudential limit on standing prevents federal courts from unnecessarily adjudicating constitutional issues and ensures that a complainant can authoritatively present a complete perspective. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974).

Although the Article III standing "elements of injury, causation, and redressability are an 'irreducible constitutional minimum,' no more subject to being waived in First Amendment cases than in any other," *Serv. Emps. Int'l Union, Local 5 v. City of Houston (SEIU)*, 595 F.3d 588, 597 (5th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), the United States Supreme Court has relaxed the prudential limits on third-party standing in cases involving the First

-6-

Amendment, *see Sec'y of State of Md. V. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). A litigant may assert the First Amendment rights of others if (1) the litigant has suffered an injury in fact to satisfy the Article III case or controversy requirement; (2) the litigant has a close relation to the third party such that the litigant is an appropriate representative to effectively vindicate the third party's rights; and (3) there exists some practical obstacle to the third party's ability to protect his own interests. *See Munson*, 467 U.S. at 956; *see also NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 459-60 (1958) (allowing the NAACP to assert the First Amendment rights of its members in opposing a court order requiring the organization to produce its membership lists).

When these elements are met, businesses that provide an online medium of expression may assert their online users' First Amendment rights in opposing a party's request for information. *See East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1022 (D. Minn. 2016) (holding that a website had third-party standing to litigate its pseudonymous users' interests in opposing production of their identities); *McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Penn. 2010) (finding that a media company had standing to assert its anonymous bloggers' First Amendment rights in opposing a subpoena); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 787 (M.D. Penn. 2008) (relying on *Munson*, 467 U.S. at 956, and holding that a newspaper had standing, in opposing a motion to compel, to assert the free speech rights of anonymous posters in its online forums); *cf. In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 17 n.3 (D.D.C. 2009) (finding, without discussion,

that a company had third-party standing to challenge a grand jury subpoena on behalf of its customers); *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 258 (D.D.C. 2003) (without discussing Article III requirements, finding third-party standing for a cellular data service to raise the free speech rights of its customers in opposing a subpoena), *rev'd on other grounds sub nom. Recording Indus. Ass'n of Am., Inc. V. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

II.  <u>Motion to Vacate the Gag Order</u>

When the government seeks information stored by an electronic communication service provider, Section 2705(b) of the Stored Communications Act, *see* 18 U.S.C. § 2501 *et seq.*, permits a court to forbid that provider from notifying any other person, including subscribers, of the existence of the warrant, subpoena, or court order authorizing the government's acquisition. Under the statute, a court shall enter such a nondisclosure order "if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(b). The nondisclosure order shall be effective only "for such period as the court deems appropriate" to prevent the otherwise occurring adverse consequences. *Id.*; *see also United States v. Appolomedia Corp.*, No. 99-20849, 2000 WL 34524449, at \*2-3 (5th Cir. June 2, 2000) (unpublished) (because "the reason for the initial order to protect the integrity of a criminal investigation no longer applie[d]," remanding for the district

court to consider whether the nondisclosure order should remain in place).

Some courts have held that indefinite orders under Section 2705(b) are prior restraints on free speech. *See Microsoft Corp. v. United States Dep't of Justice*, 233 F. Supp. 3d 887, 906 (W.D. Wash. 2017) (holding that indefinite Section 2705(b) orders are prior restraints subject to strict scrutiny); *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 881-83 (S.D. Tex. 2008) (holding that an indefinite nondisclosure order violates the First Amendment prohibition against prior restraint of speech"); *see also Appolomedia Corp.*, 2000 WL 34524449, at *2 n.6 (noting that the district court did not err in imposing a Section 2705(b) order because prior restraints on free speech are not always prohibited). Prior restraints on free speech are traditionally disfavored. *See United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001). For a prior restraint to stand, the government must demonstrate that (1) the activity restrained poses a clear and present danger or serious and imminent threat to compelling government interest; (2) less restrictive means to protect that interest are unavailable; and (3) the restraint is narrowly tailored to achieve its legitimate goal. *See In re Sealing*, 562 F. Supp. 2d at 882 (citing to *Brown*, 250 F.3d at 915-18).

An indefinite nondisclosure order may fail to meet strict scrutiny where the electronic service provider's speech will not threaten an investigation in perpetuity. *See In re Sealing*, 562 F. Supp. 2d at 881 ("To the extent such an order enjoins speech beyond the life of the underlying investigation, it must be narrowly tailored to serve a compelling governmental interest in order to pass muster under the First

-9-

Amendment."). *See generally Appolomedia Corp.*, 2000 WL 34524449, at *3 (noting the "substantial constitutional questions raised by a nondisclosure order without any limitation as to time"). In some cases, an otherwise compelling interest in preserving grand jury secrecy is either inapplicable or insufficient to sustain a permanent ban on disclosure. *See In re Sealing*, 562 F. Supp. 2d at 883-84 (relying on *Butterworth v. Smith*, 494 U.S. 624, 634 (1990)).

Moreover, an indefinite nondisclosure order may not comprise the least restrictive means to achieve the government's interest in protecting an investigation because "a date-limited [order] will be unquestionably less restrictive than an indefinite one." *Matter of Search Warrant for [redacted].com*, No. 16-2316M (FFM), 2017 WL 1450314, at *9 (C.D. Cal. Mar. 31, 2017).

## Analysis

I. Twitter's Motion to Quash should be denied because Twitter has not shown that it has Article III standing to challenge the Subpoena.

Whether the Motion to Quash should be granted depends on five issues: (1) whether Twitter has shown it has standing to challenge the Subpoena; (2) whether Twitter has shown it has third-party standing to assert the First Amendment rights of its users; (3) whether the Subpoena directly infringes any users' First Amendment rights; (4) whether the government has satisfied the substantial relationship test for those users; and (5) with respect to users whose rights the Subpoena does not directly violate, whether free speech concerns outweigh the government's need for information. Because the first issue is dispositive here, the undersigned addresses only whether

-10-

Twitter has standing to challenge the Subpoena.

### A. Twitter has not shown that it has Article III standing to challenge the Subpoena because it has not demonstrated the requisite injury in fact.

To have standing to challenge the Subpoena, Twitter must demonstrate the Article III elements for a case or controversy: injury in fact, causation, and redressability. *See SEIU*, 595 F.3d at 597. The government argues that Twitter has failed to demonstrate an injury in fact, and the undersigned agrees that Twitter has not shown that it has suffered a concrete and particularized injury in fact.

Twitter argues that it has standing to challenge the Subpoena because other courts have found third-party standing under similar circumstances: "[C]ourts throughout the country have permitted for-profit companies like Twitter to raise First Amendment challenges to government requests for their customer's identifying information." Dkt. No. 14 at 3-4 of 13. Twitter cites to many of the cases that the undersigned reviewed above.

But the United States Court of Appeals for the Fifth Circuit has made clear that to establish third-party standing and assert the First Amendment rights of others, a party must first establish that it has Article III standing in its own right. *SEIU*, 595 F.3d at 597. And showing that an Article III case or controversy exists surely requires more than mere citations to factually-similar cases. While the undersigned appreciates the trend among courts to find third-party standing in cases like this, Twitter cannot simply skip critical steps in establishing its own Article III standing here. Twitter must start by establishing a case or controversy and affirmatively demonstrate the specific

-11-

injury it personally will suffer as a direct result of the Subpoena.

In its briefing, Twitter alludes to its "interest[] in ensuring that its users are not dissuaded from speaking their minds on issues of public importance." Dkt. No. 2 at 16 of 26. But an interest in encouraging the free speech of others is not enough – Twitter must have a *personal stake* in opposing the Subpoena. Twitter has not shown how the Subpoena, by discouraging Twitter's users from exercising their free speech rights, inflicts a direct injury on Twitter. Although the undersigned recognizes Twitter's concern that the Subpoena may chill free speech, a chilling effect on Twitter's users does not constitute the concrete and particularized injury that Twitter must suffer for Article III standing.

At the hearing on Twitter's Motion to Quash, counsel for Twitter came only slightly closer to showing Twitter's personal stake in opposing the Subpoena: "The injury is that people won't use our service as much if we are perceived as a service that's targeted by the Government anytime somebody speaks out on a matter of public concern and we frankly don't do anything about it." Dkt. No. 20 at 38 of 48, lines 7-11.

Still, Twitter's bare-bones statement of its injury, without more, is too abstract to constitute a concrete and particularized injury in fact. Other than identifying itself as a for-profit organization that provides a platform for free speech, Twitter fails to explain how it suffers injury if it does not maintain an active pool of users that tweet freely. Again, Twitter must demonstrate its personal stake in having users who feel comfortable speaking their minds.

Moreover, unlike in cases where compromised user anonymity did constitute

-12-

sufficient Article III injury, Twitter has not shown how the Subpoena will cause Twitter real detriment. *See Enterline*, 751 F. Supp. 2d. at 786 (finding that a newspaper had injury in fact where it demonstrated that failure to protect anonymous commentators will "compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in advertising revenues"); *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 630 (Cal. App. 2017) (finding that Glassdoor had constitutional standing to contest an order to disclose its users' identities because Glassdoor established that anonymity was a key aspect of its business model and helped attract posters to give reliable reviews); *cf. Patterson*, 357 U.S. at 459 (finding that the NAACP would suffer financial injury where organization alleged the production order would decrease membership and thereby deprive the organization of dues and contributions). Unless it does, Twitter has not demonstrated a concrete and particularized injury.

As a result, the undersigned concludes that Twitter has failed to show it has Article III standing to challenge the Subpoena. Accordingly, the Court need not reach the issues of whether Twitter has established third-party standing to assert its users' First Amendment rights and whether those rights are infringed by the Subpoena, and the Court should deny Twitter's Motion to Quash.

II.   Twitter's Motion to Vacate should be granted because the Gag Order is not necessary to avoid seriously jeopardizing the government's investigation.

As discussed above, a Section 2705(b) nondisclosure order must be lawful both under the statute itself and under the First Amendment. For a nondisclosure order to

-13-

stand under Section 2705(b), there must exist a reason to believe that, without the order, at least one of five enumerated consequences will result. Here, although it cites to all the Section 2705(b) reasons generally, the government essentially argues under the "catchall" – that lifting the Gag Order will seriously jeopardize its investigation. Because the undersigned sees no reason to believe that lifting the Gag Order will seriously jeopardize the government's investigation of Justin Shafer, the Gag Order is no longer necessary under Section 2705(b).

In oral argument, the government explained that, if Twitter is permitted to notify its subscribers of the Subpoena, the five listed Twitter users may (1) change their operating methods if they are co-conspirators with Shafer or (2) entice or instigate others to get involved. In its response brief, the government also argues that the Gag Order is necessary to ensure the secrecy of grand jury proceedings and investigations. Such secrecy, the government maintains, ensures the grand jury's ability to carry on its constitutional function.

The undersigned is unpersuaded by the government's first argument for maintaining the Gag Order. First, because Shafer has been indicted for his crimes in an unsealed case, Shafer's co-conspirators have an incentive to change their operating methods despite the Subpoena. The ongoing restriction on Twitter's communication with its subscribers does little to conceal that Shafer – and, thus, his associates – are under investigation for cyber harassment.

Second, the government's position that the Court must enforce the Gag Order so that Twitter's users are not encouraged to comment on a public case, whether

-14-

Shafer's or *Rivello*, and possibly instigate others, fails under the statute. Section 2705(b) does not permit a nondisclosure order for purposes of curtailing the speech of internet subscribers unless that speech will result in one of the statute's five enumerated consequences. Here, sarcastic comments regarding a high-profile case – such as " ▇▇▇▇▇▇ is the least busy FBI agent of all time" – are unlikely to seriously, if at all, jeopardize the government's investigation. The government's desire to prevent Twitter users from making similar comments in the future is not an adequate justification for the Gag Order under Section 2705(b).

Finally, the government's argument that the Gag Order is necessary to protect the integrity of grand jury investigations fails for reasons similar to those above. First, an interest in grand jury secrecy does not, without more, provide a statutory basis for a nondisclosure order under Section 2705(b). Rather, the government must give the Court reason to believe that without the order, the government's investigation will be seriously compromised. More obviously, that Justin Shafer has been indicted in a public case eliminates the Gag Order's utility in preserving secrecy as to a possible prosecution of him.

And, even if the disclosure would seriously jeopardize the government's investigation, the Gag Order violates the First Amendment. Although the government's interest in grand jury secrecy may have been compelling when it applied for the Gag Order, that interest is inapplicable to sustain a permanent ban now that Shafer has publicly indicted for some time. Further, the government nearly conceded at oral argument that the indefinite Gag Order is not the least restrictive means of

achieving its interest, acknowledging that "these things should not be in perpetuity." Dkt. No. 20 at 30 of 48.

Still, the government maintains that, because Twitter can challenge the Gag Order, and because the government would be open to periodic reviews of the Gag Order's necessity, that it is not indefinite. This argument fails for two reasons. First, encouraging Twitter to seek judicial intervention when the government's need for continued secrecy ends makes little practical sense. Twitter is neither a party in the underlying case nor involved in the government's investigation; Twitter has no way of knowing when the government's need for secrecy will end. *See Matter of Search Warrant for [redacted].com*, 2017 WL 1450314, at *9. Second, and more importantly, putting the burden on Twitter and the Court to lift a no-longer-justified Gag Order is not narrow tailoring. *See id.* Thus, even with review mechanisms, the Gag Order's indefiniteness fails strict scrutiny under these particular circumstances.

Because the Gag Order is no longer justified to avoid seriously jeopardizing the government's investigation, and because, even if the Gag Order were otherwise justified, it would violate Twitter's First Amendment rights, the undersigned recommends granting Twitter's Motion to Vacate.

**Recommendation**

For the reasons and to the extent explained above, the Court should grant Movant Twitter's Motion to Quash Grand Jury Subpoena and Vacate Gag Order [Dkt. No. 1] in part. More specifically, the Court should deny the Motion to Quash Grand Jury Subpoena and grant the Motion to Vacate Gag Order.

-16-

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 22, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE